ARA B. STEVENS

v.

ELEANOR G. SHAW.

[Filed May 11th, 1904.]

1. A conveyance by a paralytic of her property to her niece being absolute in form, not mentioning its purpose—that the grantee should manage and use it for the grantor's support during her life, any remainder to be the grantee's for her services—and the grantor not having had independent advice, but only that of the person who took the acknowledgment, and the instrument containing no power of revocation a reconveyance may be had.

2. A bill to require reconveyance of property on the ground of actual fraud may be amended on final hearing to meet the proof furnished by defendant, namely, that there were other grounds therefor not inconsistent with that pleaded.

---

On November 30th, 1900, the complainant executed two deeds by which she conveyed to her niece, the defendant, Eleanor G. Shaw, three lots of land in Vineland, New Jersey. This suit is brought to compel a reconveyance of these properties and also for an accounting for the profits received from them by the defendant while the title was in her name, and also for an accounting for some eight hundred dollars of money, the control of which was passed to the defendant.

*Mr. Wheaton Berault* and *Mr. Howard Carrow,* for the complainant.

*Mr. James Buchanan,* for the defendant.

REED, V. C.

When the above deeds were executed the complainant was living with the defendant and defendant's mother. In explaining the manner by which the deeds came to be executed the defendant says:

Stevens *v.* Shaw.

"My aunt had many times talked with me about her property.  She said, in substance, that she wished to have the property entirely in my hands, and I advised her to let the title to it remain as it was, and let me manage it as her attorney.  She repeatedly told me that she wanted me to have the property in my hands to manage and to take care of her with, and the balance remaining after her death, if any, to be mine. I told her that I knew of no way for me to have absolute control of it, except by her giving me deeds of the property, and these she constantly urged me to have prepared.  I drafted the deeds and procured the notary to take the acknowledgment."

The complainant was afflicted with paralysis, and from her own testimony appears to have little recollection, and to be of feeble mentality.  Her testimony is confused and rambling, the one fact standing out clear, namely, her strong affection for and confidence in her niece, the defendant.  That the transaction now attacked is voidable is manifest from a single feature apparent in the testimony of the defendant herself.  The defendant says that the consideration of these deeds was

"that I should manage the property, using it for the support and main-tenance of my aunt during her lifetime, and the remainder, if there was any, after her decease, should be mine for my services."

This purpose, to be carried out after the execution of the deeds, was an important feature of the arrangement, yet in the deeds themselves there is no mention of this purpose.  Of the numerous cases holding this the citation of a single one is sufficient, that of *White* v. *White, 15 Dick. Ch. Rep. 104, 115.*

Again, it appears that the only advice that the complainant had was that which Mr. Abbott, who took the acknowledgement of the deed, says he gave her at that time.  He warned her that the deeds were absolute and gave the grantee absolute control over the property, and advised her to have a declaration of trust executed.  He was not, however, an independent adviser.  In the absence of such independent advice, coupled with the fact that there was no power of revocation in the instrument, the deeds for these reasons are voidable.  *Coffey* v. *Sullivan, 18 Dick. Ch. Rep. 296, 301.*

Indeed, the voidability of the transaction between the aunt and

niece upon these grounds is hardly contested, the defence being
that the gravamen of the bill is that the niece was guilty of
actual fraud in securing the deeds and moneys and that actual
fraud is unproven by the testimony. It seems to be true that
actual fraud is not proven. The complainant disclaims all recol-
lection of having made the deeds at all. She says that she
signed a paper, but she did not know what it was. She does not
state with any degree of particularity that she was induced to sign
this paper by the persuasion of her niece. The defendant swears
distinctly that the notion of putting the property under her con-
trol was entirely that of the complainant herself, and that she
only carried such notion into effect by preparing the deeds and
causing them to be executed. It seems apparent that the com-
plainant was not deceived in respect to the character of the
papers she executed. It is quite probable that from her ig-
norance of business and in her confused mental condition she did
not appreciate the consequence of her act, but there is no testi-
mony whatever that she was improperly induced by her niece
to execute the papers.

Now, the bill charges actual fraudulent conduct on the part
of Miss Shaw and, as already remarked, I find no testimony what-
ever to support this charge.

The question remains, what course should be taken in this
situation.

The power to amend a bill is liberally exercised. *Fearey* v.
*Hayes, 17 Stew. Eq. 425.* Even on final hearing this power is
exercisible if the complainant has proved a case by which he is
entitled to equitable relief. *Stew. Dig. Supp. 18b, tit. "Amend-
ments."* The limitations upon the exercise of this paper is dis-
cussed in the case of *Thornton* v. *Ogden, 5 Stew. Eq. 723,* where
it was doubted by Chief-Justice Beasley whether this power
should be exercised where the amendment consists of facts that
materially falsify the facts originally pleaded.

The facts to be set up in the present case by amendment to
meet the proofs are not inconsistent with those already pleaded.
Both series of facts might be true. The amendment will be
only cumulative. The proposed amendment having been made,

The International Silver Co. *v.* Rogers Corporation.

the proofs cannot be materially varied by any additional testimony, for the facts in support of the amended bill are proven by the defendant herself and her witnesses.

I will advise an order amending the bill, and upon such amendment being made will advise a decree directing a reconveyance of the property included in the deeds in question, and an accounting for the income for the property and for the money of complainant's which came to the hands of the defendant, Miss Shaw, allowing her for all proper expenditures made by her to or on account of the complainant.

I think, however, that because of the form of the original bill, to which the defendant was justified in interposing an answer denying the actual fraud charged against her, the costs of the suit should be paid out of the property of the complainant involved in this litigation.